ROSE E. LIVINGSTON v. DANIEL B. HOLT, as Administrator of the Estate of James H. Grady, Deceased.

(165 N. W. 975.)

**Estate of deceased person — claims against — administrator — presented to — payment refused — action to recover — defense by administrator — payment not pleaded — claim paid or reduced from other sources — may be shown — evidence — competency.**

Where one presented a claim against the estate of a deceased person through the administrator of such estate, and the administrator refused payment thereof, and suit was brought by the claimant against the administrator, and the

administrator answered but did not plead payment; notwithstanding such failure to plead payment, it is proper to show by competent testimony that the plaintiff has received money from other sources which reduced, or showed payment of, the claim filed with the administrator, and upon which suit was brought. All such evidence was competent to show that the plaintiff had no claim against the estate.

Opinion filed November 27, 1917.

Appeal from the judgment of the District Court of Cass County, Honorable *A. T. Cole,* Judge.

Affirmed.

*M. A. Hildreth,* for appellant.

"Where incompetent evidence is admitted over objection, before such error can be disregarded as nonprejudicial, it must appear that the error did not and could not have prejudiced the rights of the complaining parties. And the case must be such that the appellate court is not called upon to decide, from a preponderance of the evidence, that the verdict was right, notwithstanding the error complained of." Huston v. Johnson, 29 N. D. 546, 151 N. W. 774.

The court's charge upon the question of voluntary payments upon the insurance policy was clearly erroneous. Remington v. Geiszler, 30 N. D. 347, 152 N. W. 661; Linton v. Minneapolis & N. Elev. Co. 2 N. D. 232, 50 N. W. 357; McKyring v. Bull, 16 N. Y. 305, 69 Am. Dec. 696; Barron v. Northern P. R. Co. 16 N. D. 277, 113 N. W. 102; Petitt v. Belle Plain, 162 Iowa, 726, 144 N. W. 1015; Peloni v. Smith-Lowe Coal Co. 151 Iowa, 462, 131 N. W. 685; D. A. Enslow & Son v. Ennis, 155 Iowa, 266, 135 N. W. 1105; Nicklaus v. Burns, 75 Ind. 93; Smith v. Evans, 13 Neb. 314, 14 N. W. 406; Esterly Harvesting Mach. Co. v. Frolkey, 34 Neb. 110, 51 N. W. 594; Swords v. McDonell, 31 N. D. 494, 154 N. W. 258.

The doctrine that a jury has the right to reject the testimony of a witness rests upon the common-law principle that what the witness has testified to he wilfully knew to be false. The court fails to distinguish between perjury and mistake, and in such respect its charge was erroneous. Remington v. Geiszler, 30 N. D. 357, 152 N. W. 661, and cases cited; State v. Johnson, 14 N. D. 290, 103 N. W. 565; McPherrin v. Jones, 5 N. D. 261, 65 N. W. 685; State v. Campbell, 7 N. D. 58, 72 N. W. 935.

*Lawrence & Murphy,* for respondent.

To make a contract there must be an offer and an acceptance.

"There must be a meeting of the minds of the parties as to all essential elements. Both parties must understand the same thing in the same sense, and both parties must be bound, or neither is bound. There must be a meeting of minds on the subject-matter, relative to which the proposal and acceptance were in fact made and entered into." 1 Elliott, Contr. p. 24.

It is only in cases where it is probable that the witness has knowingly and intentionally testified falsely, that the jury is warranted in disregarding his entire testimony. McPherrin v. Jones, 5 N. D. 261, 65 N. W. 685; State v. Campbell, 7 N. D. 58, 72 N. W. 935.

GRACE, J. This is an appeal from the judgment of the district court of Cass county.

The issues of such case were tried to a jury, and a verdict was returned by them in favor of the defendant.

The facts in the case are substantially as follows: James H. Grady, deceased, Rose E. Livingston, and Mary Cary were brother and sisters. It is claimed by the plaintiff that, during the lifetime of Grady, she and Grady entered into an agreement whereby each was to contribute ratably to the support of Mary Cary. Plaintiff claimed that Mary Cary was an invalid and unable to care for or support herself. It appears that Grady had taken out a life insurance policy on his life for the sum of $3,000, which was payable to Mary Cary after the time of the insured's death. Such insurance upon the life of Grady was collected after his death and paid to Mary Cary. Rose E. Livingston filed a claim against the estate of Grady for $1,921.38, claiming that Grady made an express contract with her during his lifetime to contribute ratably to the support of Mary Cary, and that the amount of said claim was the amount due from Grady, none of which had been paid except $405. The defendant, to the complaint of the plaintiff, entered a general or specific denial to all of the allegations thereof, except that he admitted the filing of such purported claim.

There are presented in this case but two questions for our consideration. First, the insufficiency of the evidence to justify the verdict of the jury; second, errors of law occurring at the trial from the exclusion

of certain testimony offered by the plaintiff, and alleged erroneous instructions of law by the court. In order to determine whether or not the evidence is sufficient to sustain a verdict, it is well to refer to the pleadings in the case to determine what matters were put in issue by such pleadings. One of the main matters relied upon by the plaintiff, and largely the one upon which her entire claim rests, is the assertion in the complaint that at a certain time during the lifetime of Grady the plaintiff and he entered into an agreement whereby they should jointly care for and furnish medical attendance to, and incur other expenses in connection with the care and keep of Mary Cary, their sister, during her lifetime, and should equally share the entire expense with reference thereto. Plaintiff alleges her reliance upon such promise and agreement, and claims she thereby incurred expense to the amount of $3,824.75. She has filed her claim against the estate of Grady in one half that amount, less a certain credit hereinbefore stated. The complaint does not allege whether the alleged agreement was in writing or was made orally. We assume from the complaint the alleged agreement was not in writing, but, if entered into at all, was entered into orally.

In the trial court such agreement was claimed and relied upon as an express contract. Whether such contract was in fact made was a question of fact exclusively for the jury. There was some testimony tending to show that such contract was made. There was other testimony which tended to show that such contract was not made. The testimony of Mrs. Grady, the widow of the deceased, was to the effect that she was present at the Nicollet Hotel, in Minneapolis, at the time when said alleged agreement was claimed by the plaintiff to have been made, and did not hear anything of the contract referred to. This tends of course to prove that no contract was made. While negative testimony may not be entitled to as much weight and credit as positive testimony, we must not overlook the fact that the weight of testimony is exclusively a question for the jury. Whether or not there was an express agreement was a disputed question of fact about which there was conflicting testimony either of a positive or negative character, or both, and it was the exclusive duty of the jury to weigh all such testimony. It did so and returned a verdict in favor of the defendant, and such verdict was sufficiently supported by the evidence.

Plaintiff makes a further claim of error in regard to admission of testimony concerning a certain insurance policy for $3,000, to which we have before referred, claiming that the defendant having interposed no plea of payment, all the testimony with reference to the insurance was inadmissible. While it is true that the answer does not contain any allegation of payment, we are of the opinion notwithstanding this, that the testimony brought out by the defendant on cross-examination of Mary Cary in regard to the insurance policy and the disposition of the money received from such policy was competent to show the plaintiff, at the time of filing such claim against the estate, actually and in fact had no claim to file. That she had received from other sources a sufficient amount of money to reimburse herself for all the money, if any, she had expended for the support of Mrs. Cary. One needs but to read the testimony of Mrs. Cary to readily conclude that Mrs. Livingston received as much money from Mrs. Cary as she had paid out for her, and it was immaterial if such money was the proceeds of the insurance policy. If Mrs. Livingston received the money from Mrs. Cary with which to pay Mrs. Cary's expenses of living, doctor bills, etc., she certainly had no claim against the estate of Mr. Grady.

We have examined the instructions of the court with reference to the payments made from such $3,000 fund, and in them find no prejudicial reversible error. Mrs. Livingston had filed a large claim against the estate of Grady. Any testimony which would show that such claim was not owing to her was competent. We do not wish to set out the testimony in question and answers, but the testimony of Mrs. Cary shows in effect that she put the $3,000 in a bank in Syracuse; that she thought Mrs. Livingston drew checks thereon; that she paid for everything for her living for the past six or seven years, and that this included board and clothes and things of that kind, and also doctor bills.

One of the questions asked of Mrs. Cary is as follows:
Q. So you used these $3,000 to pay these living expenses?
A. Yes.

The jury by their verdict simply found in effect that Mrs. Livingston had no claim against the estate of Grady, for the reason that she had received money sufficient from other sources for the purpose of dis-

charging all obligations that she had paid or contracted for in behalf of Mrs. Cary. The jury were the exclusive judges of the weight and credibility of all the testimony, including that of Mrs. Cary, which was in places quite badly shattered. It was their province to believe or disbelieve the testimony of any witness if it appeared to them to be untrue, or to believe that part of the testimony of any witness which appeared to be true, and disbelieve that part which appeared to them to be untrue. The jury has passed upon all the testimony in this case, and the verdict is sustained thereby. With their determination we cannot interfere. The source of the power and duty of the jury in such cases is derived from the Constitution, and not from the consent of the court; nor is their duty to be interfered with by the court so long as there is evidence supporting their verdict.

We have examined the cases cited by the appellant, and find nothing therein which would in any way conflict with the conclusion we have arrived at in this case.

The judgment is therefore in all things affirmed, with costs.

Robinson, J. (concurring). The plaintiff and appellant brings this action to recover nearly $2,000 from the estate of James Grady on an alleged contract to contribute to the care of his sister. The plaintiff avers that she and Mary G. Cary are sisters of James Grady; that in 1908 at the Nicollet Hotel, in Minneapolis, it was agreed between Mrs. Livingston and her brother that they should care for their sister Mary, and that on such agreement Mrs. Livingston had advanced and paid for the care of the sister various sums amounting to $3,824.75, while James Grady had paid only $405, and that balance of his share is $1,507.38.

The answer denies that there ever was any such agreement. The jury found a verdict for the defendant, and plaintiff appeals. There was no evidence to sustain a verdict for the plaintiff, and, hence it is needless to consider any assignments of error. The case depends on the testimony of the sister Mary. She testifies that in 1908 she was saleslady in a Detroit house, and she earned from $15 to $25 a week. Then a sister at Minneapolis died and at the time of the funeral, she, Mrs. Livingston, and James Grady met at the Nicollet Hotel, in Minne-

apolis, and James Grady and Mrs. Livingston there promised each other to care for the sister Mary.

Giving full faith and credit to all the testimony by the plaintiff, it fails to show a legal contract. It shows merely a commendable and customary arrangement between prosperous members of the family to contribute to the care and expense of an unfortunate member. At the time of the arrangement in the Nicollet Hotel, the sister Mary was earning from $15 to $25 a week, which should have given her the means of providing for a rainy day. She was then no object of charity.

In December, 1914, James Grady died leaving an insurance policy of $3,000 payable to the sister Mary. She got the money and gave it to Mrs. Livingston, and it was used to pay the expense for which suit is brought without giving Grady any credit. To show that Grady should have no credit, the sister Mary testified that she herself received the $3,000 and paid it out on her debts; that she owed her sister at Salt Lake $1,000 for money loaned, and had sent the sister two $500 checks. Then, on being pressed and cross-examined, she confessed that she did not owe the sister anything, and had never sent her the $1,000, and that all her detailed testimony in regard to the matter was untrue. Hence, all her testimony goes for nothing, and the case presents no proof to charge the estate with any liability.

The court might well have directed a verdict in favor of the defendant, but without any direction the jury returned a verdict for the defendant.